[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10200

Non-Argument Calendar

_____

OCTAVIOUS BUFORD,

Plaintiff-Appellant,

*versus*

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
CYNTHIA STEWART,
Warden of Holman Correctional Facility,
In her individual capacity,
TERRY RAYBON,
Assistant Warden of Holman Correctional Facility,
In his individual capacity,
LEON BOLLING,
Warden of the St. Clair Correctional Facility,

In his individual capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:21-cv-00095-WS-MU

_____

Before WILLIAM PRYOR, Chief Judge, and ABUDU and ANDERSON, Circuit Judges.

PER CURIAM:

Octavious Buford, an Alabama prisoner, appeals the summary judgment in favor of Terry Raybon, assistant warden of Holman Correctional Facility, and against Buford's complaint that Raybon ordered or failed to stop officers from beating Buford in retaliation for complaining about his conditions of confinement. 42 U.S.C. § 1983. We affirm.

We view the evidence in the light most favorable to Buford as the nonmoving party. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). In February 2020, Buford complained about his conditions of confinement to Raybon and Warden Cynthia Stewart. During one discussion, Buford joked with them, "If I sue you . . . do you think you could pay?" Raybon asked if Buford

would accept $100,000, but Buford said, "That's not enough . . . . because the way you got me up under these conditions." Raybon "walked off" and "sent the riot team" at him. About ten members of the "riot" team entered his cell. An officer asked, "What you and Warden Raybon got going on?" and told Buford to get out of bed. Buford said, "I'm not fixing to let y'all jump on me like that . . . [with] no authority." The officers started whispering to each other and "just reached in there and started spraying" him with large cans of mace before telling him to "cuff up," which he did. After he was handcuffed, the officers entered his cell, jumped on him, kicked him, stomped him, dragged him down a ramp and flipped him upside down, and kept stomping him for five to ten minutes.

The officers took Buford to the infirmary, but the medical assessment reported no discernable injuries such as redness, markings, or scratches. Buford received disciplinary infractions for disobeying a corrections officer and for possessing contraband. The incident report stated that an officer had ordered Buford to cuff up for a contraband search, and when Buford refused, the officer administered a one-second burst of pepper spray, handcuffed Buford, and discovered a cell phone under the toilet. A week later, Buford spoke with a mental health counselor about the incident and said, "I refused to cuff up and they sprayed me. I know I was wrong. . . . I need to learn to control my temper."

Buford sued Raybon and several other officers for various violations of the Eighth Amendment. Buford alleged that Raybon

ordered the officers to beat him, knew that the officers were beating him, and failed to stop or prevent the beating. Buford submitted depositions of two inmate witnesses, Mario Avila and Earl Manassa. Avila attested that he could see Buford's cell from the reflection on the window in the "cube," which was a secured guard post with a direct line of sight into the cells. When asked about Raybon's location during the beating, Avila said, "I think he stayed inside the cube." When asked again whether Raybon was inside the cube during the incident occurred, Avila said, "I think so. . . . Yeah. I think so. . . . I think [he] was in the cube." Avila believed that the warden "should be present" during an extraction. Manassa stated that he could not see the cube or the inside of Buford's cell, but he saw several officers go to the cell and smelled pepper spray.

In his affidavit, Raybon denied ever ordering a "hit" on an inmate, directing officers to use unwarranted force on an inmate, or retaliating against an inmate for exercising his constitutional rights.

The district court granted summary judgment in favor of Raybon. The district court ruled that Buford could not establish that Raybon ordered the officers to beat him because his testimony was that Raybon "sent the riot team" to his cell, not that Raybon sent the riot team with orders to assault him. And the district court ruled that Buford could not establish that Raybon was liable for failing to stop the beating. The district court explained that although Buford argued that Raybon was present at the scene and watched the beating, Buford's assertion that Raybon was stationed

in the cube and could see Buford's cell relied solely on Avila's testimony. The district court explained that Avila's testimony was not that Avila saw Raybon in the cube or knew what Raybon could see from his location, but that he "th[ought]" Raybon was in the cube "when all of this happened," which meant that Avila lacked personal knowledge that Raybon saw the alleged beating, Federal Rules of Evidence 602. The district court determined that Buford failed to establish that Raybon knew of a constitutional violation without any evidence that Raybon saw it.

We review *de novo* a summary judgment. *Underwood v. City of Bessemer*, 11 F.4th 1317, 1327 (11th Cir. 2021). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The district court correctly entered summary judgment in favor of Raybon because Buford's evidence was insufficient to establish a genuine issue of material fact about whether Raybon saw or otherwise knew that the officers were beating Buford. At the summary judgment stage, Buford had to present substantial evidence to permit a reasonable jury to find that Raybon was "in a position to intervene in an ongoing constitutional violation" and "failed to do so." *Williams v. Radford*, 64 F.4th 1185, 1199 (11th Cir. 2023). Buford failed to do so. Buford did not see Raybon during the beating because Raybon had "walked off" after their discussion. Manassa could not see the cube from his cell. And the entirety of Avila's deposition, even the portions not considered by the district

court, establishes that Avila did not testify that he knew that Raybon saw the alleged beating. So, viewed in the light most favorable to Buford, none of the evidence creates a genuine issue of material fact about whether Raybon knew to intervene during the beating. *See id.* And Buford does not challenge the ruling that his testimony that Raybon "sent" officers to his cell failed to establish that Raybon ordered the officers to assault him. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014).

We **AFFIRM** the summary judgment in favor of Raybon.